UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

—————————————————————————

CARRIE A. COLLINS,

                  Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.

—————————————————————————

**REPORT AND
RECOMMENDATION**

08-CV-1357
(LEK/VEB)

## I. INTRODUCTION

In September of 2005, Plaintiff Carrie Collins applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been disabled since May 13, 2004. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, through her attorney, Legal Services of Central New York, Christopher Cadin, Esq. of counsel, commenced this action on December 19, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On November 5, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff applied for DIB and SSI benefits on September 22, 2005, alleging disability beginning May 13, 2004. (T at 34, 45, 46, 70-75).[1]  The applications were denied initially on January 12, 2006, and on reconsideration. (T at 34, 47-52).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (T at 34, 53).   On May 6, 2008, a video conference hearing was presided over by ALJ Gerald Ryan from Newark, New Jersey.  (T at 34, 216).  Plaintiff, represented by Marjorie Bazan, a non-attorney representative, appeared and testified in Utica, New York.  (T at 34, 216). On May 29, 2008,  ALJ Ryan issued a decision denying the applications for benefits.  (T at 34-44).  Plaintiff filed a request for review of that decision. The ALJ's decision became the Commissioner's final decision on October 20, 2008, when the Appeals Council denied Plaintiff's request.  (T at 3-5).

Plaintiff, through counsel, commenced this action on December 19, 2008. (Docket No. 1).   Plaintiff filed a supporting Brief on July 2, 2009. (Docket No. 10).   The Commissioner filed a Brief in opposition on September 30, 2009. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 6).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

motion be granted and that this case be dismissed.

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado

v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. <u>See</u> <u>Bowen</u>, 482 U.S. at 146 n. 5; <u>Ferraris v. Heckler</u>, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

**1.     Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2009. (T at 36).  The ALJ found that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision. (T at 36).  He concluded that Plaintiff had the following impairments: chronic degenerative joint disease of the left and right hip and obesity and that those impairments were "severe," as that term is defined under the Act. (T at 36).  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 38).  The ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work, subject to the following limitations: she can only sit uninterrupted for one hour, stand uninterrupted for 10 minutes, walk uninterrupted for 5 minutes, ambulate without a cane for 100-200 yards, sit for 6 hours, and walk for 30 minutes in an 8 hour workday. (T at 39).

The ALJ concluded that Plaintiff could not perform her past relevant work, but after considering Plaintiff's age (28 years old), education (high school), work experience, and residual functional capacity, determined that jobs exist in significant numbers in the national economy that Plaintiff can perform. (T at 42). Accordingly, the ALJ determined that Plaintiff was not disabled under the Social Security Act at any time relevant to the decision. (T at 43. As noted above, the ALJ's decision became the Commissioner's final decision on October 20, 2008, when the Appeals Council denied Plaintiff's request for review. (T at 3-5).

### 2.      Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. Plaintiff offers six (6) arguments in support of her position. First, she contends that the ALJ erred because he did not find that Plaintiff's depression was a severe impairment. Second, Plaintiff asserts that the ALJ failed to adequately develop the administrative record. Third, Plaintiff argues that the ALJ did not properly consider the opinions of her treating physicians. Fourth, Plaintiff contends that the ALJ's residual functional capacity assessment was flawed. Fifth, she argues that the ALJ did not meet his burden at Step Five. Sixth and finally, Plaintiff asserts that she was denied due process. Each argument will be addressed in turn.

### a.      Depression

The ALJ noted that Plaintiff was treated with prescription medication for depression (T at 39), but did not list depression among the impairments that he found to be "severe" under the Act. Rather, the ALJ concluded that the evidence "fail[ed] to establish any impairment involving depression that had any greater than a slight or minimal effect on her ability to perform basic work activities." (T at 39). Plaintiff challenges this finding, pointing

6

to the following evidence:

She was diagnosed with depression and prescribed Zoloft and Cymbalta. (T at 97, 163, 172).  Plaintiff testified that she is unhappy and cries when trying to deal with stress. (T at 239).  Plaintiff also points to the ALJ's conclusion that her depression causes "mild restrictions in activities of daily living" and "moderate deficiencies of concentration, persistence or pace." (T at 39).  Plaintiff asserts that such findings contradict the ALJ's overall assessment that her depression was not a severe impairment.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight

abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

When evaluating the severity of mental impairments, the Regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). In this case, the ALJ concluded that Plaintiff's depression was a medically determinable impairment. (T at 39).

Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3). These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4). A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1).

This Court is inclined to agree with Plaintiff in the first instance insofar as the ALJ's finding of "moderate" deficiencies of concentration, persistence or pace suggests a severe impairment. In other words, moderate deficiencies in that area would likely have more than a minimal effect on an individual's ability to work. However, any error by the ALJ in this regard was harmless because the ALJ continued to the next step in the sequential evaluation process and determined that Plaintiff's depression did not meet or medically

equal any of the listed impairments.  The ALJ gave specific consideration to §12.04 of the Listings and discussed why he did not find that Plaintiff met or medically equaled that Listing. (T at 39).

As such, even if the ALJ had concluded that Plaintiff's depression was a severe impairment, it would not have changed the outcome of his decision.  See generally Duvergel v. Apfel, No. 99 Civ. 4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar.29, 2002); Walzer v. Chater, 93 Civ. 6240, 1995 WL 791963 at *9 (S.D.N.Y. Sept.26, 1995) (ALJ's failure to discuss a treating physician's report was harmless error where consideration of report would not have changed outcome); see also Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1996) (harmless error rule applies to review of denial of disability benefits).

To establish that her impairments meet or equal § 12.04 of the Listings (Affective Disorders), Plaintiff must first satisfy one of the threshold criteria set forth in Subsection (A) of the impairment descriptions.  This typically involves proof of a medically determined mental impairment, combined with evidence of some definite limitation caused by that impairment.

If Plaintiff falls within the threshold parameters of Subsection (A), the inquiry turns to Subsection (B) of § 12.04 to determine whether her "mental impairments result in at least two of the following: (1) marked restrictions in activities of daily living; (2) marked restrictions in social functioning; (3) marked restrictions in maintaining concentration, persistence, or pace; (4) repeated episodes of decompensation, each of extended duration." Paratore v. Comm'r of Social Security Admin., No. 05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. Feb. 25, 2008).

Here, as noted above, the ALJ concluded that Plaintiff had a medically determinable

9

impairment (satisfying the Subsection (A) threshold requirement), but found that she did not meet the applicable Subsection (B) criteria.  Although Plaintiff was diagnosed with and treated for depression, there is no indication that the condition caused marked restrictions in any of the domains of functioning or repeated episodes of decompensation.  Indeed, Plaintiff's mood was noted to improve with treatment (T at 155, 158) and she has pointed to no medical evidence contradicting the ALJ's conclusion that she suffered only mild restrictions with respect to activities of daily living, mild difficulties as to social functioning, and moderate (but not marked) restrictions in maintaining concentration, persistence, or pace. (T at 39).  Accordingly, this Court finds that the ALJ's decision in this regard is supported by substantial evidence and free of reversible error.

### b.    Development of the Record

Dr. Timothy Izant, an orthopedic specialist, described Plaintiff's pain as "severe" and "intolerable," noting that she was "unable to work or sleep." (T at 190).  In a supplemental report dated April 23, 2008, Dr. Izant opined that Plaintiff was unable to lift and/or carry objects or walk without a cane. (T at 211).  He also indicated that she was unable to walk at a reasonable pace on uneven or rough ground. (T at 211).

This assessment was contradicted by Dr. Teglassy, Plaintiff's primary care physician, who completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) and in which he opined that Plaintiff could occasionally lift/carry up to 10 pounds, sit for 1 hour without interruption, stand for 10 minutes without interruption, walk for 5 minutes without interruption, sit for 6 hours in an 8 hour work day, stand for 1 hour in an 8 hour work day, walk for 30 minutes in an 8 hour work day, and perform activities like shopping and caring for personal hygiene.  (T at 144-49).

10

Near the end of the hearing, the ALJ suggested to Plaintiff's representative that there was a need to "reconcile or distinguish Dr. Tiglossy [*sic*] and Dr. Izant and their opinions." (T at 250). Plaintiff's representative responded that Dr. Izant's assessment was entitled to greater weight because he was a specialist. (T at 250-51).

The ALJ ultimately decided to afford "no significant weight" to Dr. Izant's April 2008 assessment, finding that it was contrary to the objective medical evidence and the treatment notes as a whole. (T at 42). Plaintiff argues that the ALJ should have contacted Dr. Izant and requested further information before disregarding his assessment.

The ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1212(e)(1), 416.912(e) (1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source ... does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

However, the duty to re-contact only arises if the ALJ is unable to determine whether the claimant is disabled based upon existing evidence. See Rosa v. Callahan, 168 F.3d 72, 79, n. 5 (2d Cir.1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no

obligation to seek additional information in advance of rejecting a benefits claim.") (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir.1996)).

Here, the ALJ did not reject Dr. Izant's report as inadequate, *i.e.* lacking in sufficient detail.  Rather, the ALJ found that it was unsupported by the clinical notes and contradicted by the assessment of Dr. Teglassy, Plaintiff's treating physician.  Further support for the ALJ's finding in this regard is provided by the assessment of Dr. Gregory B. Shankman, another treating source, who indicated that he "agree[d] completely" with Dr. Teglassy's assessment and the limitations as expressed. (T at 201).  It should also be noted that Dr. Izant indicated that Plaintiff would need "a special seat and care considerations for sedentary work," along with the ability to "move frequently and adjust her position." (T at 211).  The former finding suggests that Dr. Izant believed Plaintiff retained the ability to perform sedentary work, with certain considerations.  The ALJ's residual functional capacity assessment at least partially accounts for Dr. Izant's concern about Plaintiff's need to move frequently and adjust her position through its finding that she can only sit uninterrupted for one hour. (T at 39).

Lastly, Plaintiff has not offered any meaningful suggestions as to what the ALJ should have re-contacted Dr. Izant about and/or how any further information would have changed the outcome.  Accordingly, this Court finds that the ALJ did adequately develop the record and that substantial evidence, including (in particular) the assessments of two of Plaintiff's treating physicians, supports his ultimate conclusion.

### c.   Treating Physicians' Rule

Plaintiff contends that Dr. Izant's assessment was entitled to controlling weight under the treating physician's rule and that the ALJ's refusal to afford the assessment that weight was error.

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) .

As explained above, this Court finds no reversible error in the ALJ's evaluation of Dr.

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

Izant's assessment.  "Conflicts in evidence . . . are for the Commissioner to resolve. White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. Where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id. (citing Veino v. Barnhart, 312 F.3d at 586).

### d.    Residual Functional Capacity Assessment

Plaintiff contends that the ALJ's residual functional capacity ("RFC") assessment is flawed because it does not account for the limiting effects of her depression and because it was based upon an improper devaluation of Dr. Izant's assessment.

RFC is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a RFC determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  A RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ's RFC determination was consistent with the findings of Dr. Teglassy, Plaintiff's treating physician, and Dr. Shankman, a treating orthopedist. (T at 145-49, 201).  Further, the ALJ noted that although Plaintiff suffers from decreased range of motion and pain in her hips bilaterally, she suffers no numbness, tingling or swelling.  (T at 41).  The treatment notes indicate restrictions with regard to extensive walking, sitting, and standing, and the ALJ's RFC determination took those restrictions into consideration. (T at 41).  With regard to Plaintiff's depression, as discussed above, the ALJ did consider the limitations imposed by that condition, but ultimately concluded that it did not cause any significant limitation with regard to her ability to perform unskilled work.  Plaintiff has not provided any medical evidence to contradict this conclusion and this Court finds no reversible error in the ALJ's determination, which is supported by substantial evidence.

### i.    Hypotheticals Presented to Vocational Expert

Mr. Meola testified at the hearing as a vocational expert.[5]  The ALJ presented Mr. Meola with a hypothetical containing substantially the elements of Plaintiff's RFC, as determined by the ALJ. (T at 244-45).  Mr. Meola opined that a person with that RFC could perform sedentary unskilled work, such as an order clerk, document preparer, sorter, assembler, and bench worker (1,000 jobs locally, 15,000 regionally, 40,000 nationally).

Plaintiff argues that the hypothetical was flawed because it did not fully incorporate Dr. Izant's assessment.

Whether a hypothetical given to a vocational is appropriate depends on whether the hypothetical fully encompasses the claimant's limitations. Magee v. Astrue, No.

---

[5]Mr. Meola's first name does not appear in the hearing transcript.

5:05-CV-413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing <u>Varley v. Sec'y of Health & Human Servs.</u>, 820 F.2d 777, 799 (6th Cir.1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." <u>Id.</u>

As set forth above, the ALJ's RFC determination was supported by substantial evidence.   Thus, his hypothetical, which incorporated the factors included within that determination, was proper and the ALJ was entitled to rely on the vocational expert's testimony in support of a finding of no disability.

### e.    Due Process

At the hearing, Plaintiff's representative noted that she had never received a full list of the exhibits provided to the vocational expert. (T at 243).  In a post-hearing memorandum, Plaintiff's representative repeated the protest that she had never received the full exhibit list or a list of exhibits provided to the vocational expert. (T at 8).  Prior to the hearing, the representative had moved for a subpoena *duces tecum* to the vocational expert, requesting "information pertinent to the full presentation of my client's case." (T at 8).   The representative also complained that the vocational expert was not visible to either the Plaintiff or the representative during the hearing because the camera focused on the ALJ and not on the vocational expert.  (T at 8).  The representative complained that the vocational expert was never introduced to the Plaintiff "as both courtesy and procedure dictate." (T at 8).  Plaintiff now contends that the failure to provide the list of exhibits that were given to the vocational expert amounted to a denial of due process.  Plaintiff cites <u>Henry v. Astrue</u>, No. 07 Civ. 0957, 2008 WL 5330523,  at *12-*13 (S.D.N.Y. Dec. 18, 2008) in support of her argument.

16

In <u>Henry</u>, the District Court remanded the case on the ground that the claimant "was denied an opportunity to effectively cross examine the expert and present rebuttal evidence because he did not have the evidence [the vocational expert] relied on." <u>Id.</u> at *13. However, in <u>Henry</u>, the claimant articulated a challenge to the expert's testimony, namely that his sources were not reliable. <u>Id.</u> at *12.  Thus, the claimant was able to show arguable prejudice arising from the due process violation, namely, that he was not able to effectively cross-examine the expert regarding the sources due to the failure to provide the exhibits. No such argument is offered by the Plaintiff here.  Rather, she simply complains of the failure to provide the exhibit list without offering any indication as to how the provision of the list prior to or at the hearing would have changed the outcome of the case.  In light of this fact, this Court finds that any error in this regard does not warrant remand or reversal.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating sources, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error.  Because this Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the

Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   February 4, 2010
         Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE**

18

**OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**
Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

February 4, 2010

Victor E. Bianchini
United States Magistrate Judge

19